IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| NATHAN RINNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:21-cv-04076-MDH |
| ) | |
| CAMDEN COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendants' Motion to Strike Pleadings, or in the alternative, Disqualify Plaintiff's Counsel for Communication with a Constituent of a Represented Party. (Doc. 27). The motion has been fully briefed. On July 20, 2021, the Court conducted a hearing on the pending motion. Counsel for Plaintiff, Danielle Twait, Lathrop & Gage, testified regarding her involvement in the case. Camden County Commissioner James Gohagan also testified. The Court heard argument from counsel and post-hearing briefs have now been submitted.

To begin, the Court has focused its analysis in ruling on the pending motion on the elimination, or limiting, of any alleged prejudice Defendants argue they may suffer based on the alleged conduct of Plaintiff's counsel. As more fully discussed herein, the extent of any alleged ethical violations by counsel, and any possible further discipline, i a matter that should be further analyzed by the Missouri Office of Chief Disciplinary Counsel.

## BACKGROUND

On April 7, 2021, Plaintiff filed this lawsuit. On April 19, 2021, Plaintiff filed an Amended Complaint and then on April 26, 2021 a motion for preliminary injunction. Plaintiff alleges defendants Camden County, Missouri, the Camden County Commission, and Presiding

1

Commissioner Greg Hasty have punished him for exercising his rights to free speech and assembly by banning him from all county property. Plaintiff alleges he was banned on the false premise of displaying disruptive and harassing conduct. It has become clear to the Court, through the testimony and argument presented at the hearing, that there are numerous disputes currently pending among the County, its elected officials, its employees, and its constituents. While the specific nature of other pending disputes was not disclosed, it is clear that Lathrop & Gage is involved as legal counsel in some of the disputes that extend beyond this lawsuit, including matters where Charles McElyea served as legal counsel for Camden County.

On May 3, 2021, Plunkert entered his appearance on behalf of Defendants. On May 4, 2021, C. Pleban and J.C. Pleban entered their appearances on behalf of Defendants. Defendants filed a motion to dismiss Plaintiff's First Amended Complaint. The parties briefed the motion to dismiss and the preliminary injunction. During the briefing, on May 19, 2021, Twait advised Plunkert she had received communications from Commissioner Gohagan. Twait requested consent to further communicate with him which was denied. Twait then produced a text chain, upon request of counsel for Defendants, dated May 10, 2021 regarding the communications between Twait and Gohagan.

The Camden County Commission, which has been named as a Defendant, is made up of three commissioners. Commissioner Greg Hasty, who is also a named defendant in the Amended Complaint, and commissioners James Gohagan and Don Williams who are not individually named. The county commissioners have an equal 1/3 vote and vote to manage all affairs of Camden County, including litigation. Charlie McElyea has been a salaried employee of Camden County as the county's attorney since January 1, 2020, and represented Camden County as an attorney in private practice prior to that date.

Defendants' motion centers around Plaintiff's lead counsel Twait's communications with Commissioner Gohagan and her receipt of a recorded conversation between Commissioner Gohagan and the County Commission's attorney McElyea.

On May 10, 2021, Twait and Gohagan exchanged text messages. A review of the text message exchange reveals that Twait responded to Gohagan's initial message, solicited additional information through a question, and engaged in communications with the commissioner. Further, the text message exchange occurred after counsel for Defendants had entered appearances in this matter. While Twait acknowledges she did respond and engage in communications with Gohagan, she testified that she was not sure whether or not Gohagan was represented by counsel for the County. Twait further testified at the hearing that the "answer was unclear and it is still unclear as I sit here today."

In addition, Twait received a recorded conversation from Plaintiff, who had obtained the recording from his friend Gohagan. The recording was a conversation between Gohagan and the county's attorney McElyea. The conversation and recording occurred on or about March 26, 2021 and was sent to Plaintiff's lawyers by the Plaintiff around May 7, 2021. Plaintiff's attorneys state they ultimately listened to the recordings on or about May 18, 2021. Plaintiff's counsel states after listening to the recordings, and seeking legal advice, the decision was made to turn all the recordings over to Defendants on May 21, 2021. (See Doc. 47). Plaintiff's counsel argues the recordings are not covered by the attorney-client privilege and even if the conversation was privileged Gohagan did not inadvertently disclose it but rather intentionally transmitted it to Plaintiff waiving any privilege.

3

Defendants ask the Court to ultimately either strike Plaintiff's Complaint or disqualify Lathrop & Gage from representing Plaintiff in this proceeding based on these communications and actions.

## DISCUSSION

Missouri Supreme Court Rule 4-4.2 states: In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

> Comment 7. In the case of a represented organization, Rule 4-4.2 prohibits communications with a constituent of the organization who supervises, directs, or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. Consent of the organization's lawyer is not required for communication with a former constituent. If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule 4-4.2. Compare Rule 4-3.4(f). In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See Rule 4-4.4.

> Comment 8. The prohibition on communications with a represented person only applies in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that the lawyer has actual knowledge of the fact of the representation; but such actual knowledge may be inferred from the circumstances. See Rule 4-1.0(f). Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious.

Defendants argue the Court should consider that the overriding purpose of Rule 4.2 is to prohibit Plaintiff from obtaining an unfair advantage over Defendants as a result of Twait's ex-parte communications with Gohagan. Citing *Estate of Elkins v. Pelayo,* No. 1:13-cv-01483-AWI-SAB, 2020 U.S. Dist. LEXIS 35567, at *23 (E.D. Cal. Feb. 28, 2000). Here, Twait testified she did not know whether Commissioner Gohagan was represented at the time of the text exchange.

4

In fact, at the hearing Twait testified she is still unsure whether he is represented. However, Twait clearly knew Plaintiff, her client, had sued the County Commission and that Gohagan was one of three county commissioners. Further, part of the relief sought in the lawsuit is to void a decision made by the commissioners when they voted to ban the Plaintiff from county property. The lawsuit specifically addresses actions taken by the Commission, a three person voting entity, that would have included Gohagan's vote. Simply because Gohagan may have voted as Plaintiff preferred does not mean he is "fair game" to be contacted by counsel for Plaintiff who has sued the Commission. Twait, while testifying she was "unsure" of whether he was represented, cannot evade the situation by "closing her eyes to the obvious" which is that she had sued the Commission on behalf of her client, which would include Gohagan as a 1/3 voting member. Further, even though Gohagan was not sued individually it would be clear that his vote as a county commissioner would be highly relevant and part of the litigation in this case. He would also seem to fall squarely into the constituents described in Comment 7 to Rule 4-4.2. At best, Twait should have sought further instruction on communicating with the commissioner about the subject of this lawsuit. In her own words she testified it was unclear whether he was represented. Therefore, if it was in fact unclear, and she was not confident she could communicate with him under the ethical rules as a represented party, she should not have elicited information from him.

In addition, Twait, through her associate, also listened to the recording of Gohagan and the county's attorney McElyea regarding Plaintiff, his ban from the county, and his lawsuit. It is clear in that recording that Gohagan is discussing issues concerning Plaintiff with the county's attorney. Gohagan recorded the conversation with the county's attorney regarding Plaintiff and his lawsuit and then provided the recording to Plaintiff. Plaintiff in turn provided the recording to his attorneys. Here, when counsel for Plaintiff began listening to the recordings provided by Plaintiff

and determined one of the conversations was a recording of the county's attorney discussing the pending lawsuit with a county commissioner, a potential attorney-client communication, the review most likely should have terminated. Instead, the recording was listened to, a memo was prepared regarding its contents, additional attorneys reviewed the memo and *then* the recording was disclosed to counsel for Defendants.

Plaintiff quickly points out that Defendants cannot argue Gohagan is a constituent of the Commission for purposes of the attorney client privilege but then lacks authority to waive the attorney client privilege. Plaintiff argues Defendants are using Gohagan's authority as both a sword and shield and that it is "self-serving" and should be considered by the Court in its determination. However, Plaintiff also still contends that it was "unclear" whether Gohagan was represented. Twait engaged in communications with Gohagan despite this uncertainty. The Court does not find the parameters of Comment 7 so ambiguous. In any event only *after* Twait's text message exchange with Gohagan (and apparently in discussing whether to seek an affidavit from him) did counsel seek permission to communicate with Gohagan. In addition, the Court is dismayed that Plaintiff's counsel listened to the entire recording of the conversation between McElyea (who Twait testified was known to be a county attorney) and Gohagan, prepared and distributed a memorandum concerning the conversation, and then claims to have "promptly notified Defendants' counsel of the recording and turned over the same within three days of learning the contents."

Regardless, in light of the testimony and exhibits the Court has reviewed, the Court cannot find that Defendants have suffered any significant prejudice as a result of Twait's actions. As the Court states herein, Defendants will be allowed to conduct depositions and limit other discovery to eliminate any alleged prejudice. Defendants have not established that Plaintiff obtained any

6

Case 2:21-cv-04076-MDH   Document 49   Filed 08/17/21   Page 6 of 9

information or evidence that would not have been subsequently discovered in this case. Further, there simply is no evidence of prejudice that would taint the case going forward based on this Court's review of the information obtained by Twait through either the text messages or the recording. Commissioner Gohagan's recollection of facts and position regarding the County's actions toward Plaintiff would certainly have become known in the course of this litigation.

Defendants cite *Wescott Agri-Prod., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095–96 (8th Cir. 2012) in support of their motion to strike the pleadings and/or disqualify counsel: In *Westcott,* the Eighth Circuit stated:

> By its nature as a court of justice, the district court possesses inherent powers "to manage [its] affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). These inherent powers include the ability to supervise and "discipline attorneys who appear before it" and discretion "to fashion an appropriate sanction for conduct which abuses the judicial process," including assessing attorney fees or dismissing the case. *Id*. at 43–45, 111 S.Ct. 2123.
>
> The district court's inherent power to govern the practice of lawyers appearing before it "encompasses, among other things, the authority to police lawyer conduct and to guard and to promote civility and collegiality among the members of its bar." *Sahyers v. Prugh, Holliday & Karatinos*, *1096 P.L., 560 F.3d 1241, 1244 (11th Cir. 2009) (footnote omitted). In exercising these inherent powers, it is not unjust to hold a client responsible for its attorney's misconduct. See *Link*, 370 U.S. at 633, 82 S.Ct. 1386. The client "voluntarily chose [its] attorney as [its] representative in the action, and ... cannot now avoid the consequences of the acts or omissions of [its] freely selected agent." *Id*. at 633–34, 82 S.Ct. 1386.

However, unlike the remedy Defendants seek in this case, the Eighth Circuit in *Westcott,* affirmed the district court's decision to deny Plaintiff's claim for attorney fees and costs after granting it summary judgment. *Id.* The district court found that plaintiff had not established that its request for fees and costs was reasonable "in light of its conduct in this litigation, including its 'evasiveness' in responding to discovery. Noting the acrimony in the briefing and prosecution of the case, the district court described Wescott's actions as less than exemplary and demonstrating

7

Case 2:21-cv-04076-MDH   Document 49   Filed 08/17/21   Page 7 of 9

excessive zeal." *Id.* at 1093 (internal quotations omitted). The Court finds this case, while supporting the Court's ability to take into consideration an attorney's conduct, does not touch upon the same issues presented here.

Here, the Court finds striking the pleadings or disqualifying Plaintiff's counsel to be an extreme remedy. More extreme than can be justified. The case has just recently been filed and the information obtained by Plaintiff's counsel can be handled in a way to limit any alleged prejudice to Defendants by the Court's rulings herein. Twait's text communications with Gohagan should be, and according to defense counsel already have been, reported to the Missouri Office of Chief Disciplinary Counsel for its evaluation of the conduct. It is for that office to decide what, if any, further actions should be taken. This Court focuses this Order on addressing any prejudice that might have occurred in this case. Based on the Court's review of the record before it, the Court finds the communications are not so prejudicial as to require the severe remedies sought by Defendants.

**DECISION**

Wherefore after a careful review of the record before the Court, including the testimony, briefing and exhibits offered by the parties, the Court hereby rules as follows:

1. Counsel for Plaintiff is ordered to consult with the Office of Chief Disciplinary Counsel of the State of Missouri regarding the appropriateness of the firm's handling of: i) the text message exchange between Twait and Commissioner Gohagan; and ii) the firm's handling, and listening to, the recording of Commissioner Gohagan's conversation with the Commission's attorney regarding Plaintiff. Counsel for Plaintiff shall certify to the Court within 10 days of the date of this Order that they have complied with this Order.

2. The parties are granted leave to conduct the deposition of Commissioner Gohagan prior to the Court's hearing on Plaintiff's motion for preliminary injunction.

3. Plaintiff may not use the recording of the conversation between Gohagan and the Commission's attorney, Charles McElyea, or any information derived from listening to that recording at trial or during the hearing on the preliminary injunction.

4. Plaintiff may not question McElyea regarding the recorded conversation, or statements made by him in the conversation, at trial or during the hearing on the preliminary injunction.

5. The law offices of Lathrop & Gage are hereby Ordered to decline and avoid any communications with Commissioner Gohagan concerning any issue relating to this lawsuit other than communications during the normal judicial process with the knowledge of defense counsel. Lathrop & Gage shall see that this Order is communicated to any member of its staff involved in any way in the representation of Plaintiff.

6. Commissioner Gohagan is hereby Ordered not to have any further communications or contact with Plaintiff's counsel regarding Plaintiff or the subject matter of this lawsuit except as part of the normal judicial process with the knowledge of defense counsel. Defense counsel shall provide a copy of this Order to Commissioner Gohagan.

**IT IS SO ORDERED.**

DATED: August 17, 2021

               */s/ Douglas Harpool*
               **DOUGLAS HARPOOL**
               **UNITED STATES DISTRICT JUDGE**