IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| NATHAN RINNE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 2:21-cv-04076-MDH ) |
| CAMDEN COUNTY, et al., | ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court are Defendants' Motions for Summary Judgment. (Docs. 171 and 173). The motions have been fully briefed and are ripe for review. For the reasons set forth herein the Court denies Defendants' motions.

## BACKGROUND

This lawsuit arises out of Camden County's vote to ban Plaintiff from County property allegedly due to his disruptive and harassing behavior and for the safety of County employees. Plaintiff contends the ban was issued because of his criticism of Camden County officials and that the ban violates his First and Fourteenth Amendment Rights. This Court previously issued an opinion denying defendant Hasty's motion to dismiss based on qualified immunity finding Plaintiff had alleged that Hasty violated clearly established rights. The Eighth Circuit affirmed the Court's Order denying the motion to dismiss. *Rinne v. Camden County*, 65 F.4th 378, 382 (8th Cir. 2023). The ban imposed by Defendants expired and as a result the Eighth Circuit found any injunctive relief was rendered moot by the expiration of the ban.

1

## STATEMENT OF FACTS[1]

Plaintiff Nathan Rinne is a resident of Camden County, Missouri who regularly posts opinions on social media, including on a Facebook group, where he voices opinions and concerns related to Camden County and the County Commission. Plaintiff has posted, for example, about a controversy referred to as "Gravel Gate," involving the grading and graveling of a road which Plaintiff believed to have been improper and to benefit a campaign contributor of Commissioner Williams. Plaintiff also posted that he believed a county employee had recently changed county property records in relation to the road at issue in the Gravel Gate matter and that the timing of the recently changed county records was suspicious.

Plaintiff was also publicly critical of the purchase of a building from the Camden County Commission's attorney Charles McElyea and made a social media post critical of the purchase of the building, including a video of the condition of the building after a tour provided by Commissioner Gohagan. Plaintiff contends that the following morning Commissioner Gohagan was confronted by former Commissioner Hasty, Commissioner Williams, and several county maintenance workers regarding this video. Commissioner Gohagan recorded his encounter. The parties dispute what comments were made by both the parties to the lawsuit, and others, regarding this "confrontation." After the confrontation, a county employee confronted Plaintiff in the county parking lot after work. A surveillance video of the confrontation was offered at the preliminary injunction hearing.

Plaintiff cites to numerous statements and allegations that were made by Defendants, including comments made at a commission meeting on January 26, 2021, where Hasty admitted

---

[1] The Court has taken facts from the briefing for purposes of providing the background for the Court's analysis. The parties briefing, and dispute over the "material facts," provides additional support that this case should be decided by a jury.

2

he was angry at Plaintiff "because you get on Facebook every night and make comments about people." Plaintiff cites to another example of a recorded conversation with Commissioner Gohagan, in which Commissioner Williams allegedly threatened to put Plaintiff "in the hospital" if he was ever defeated in an election for county commissioner. There are numerous allegations of comments and behaviors of both Plaintiff and Defendants. Both parties make arguments about the admissibility of the allegations and evidence. The Court makes no ruling on admissibility but finds there are questions of material fact with regard to statements by all witnesses and parties that have been submitted to the Court in the briefing. The credibility of the statements and testimony cited is a factual question for the jury.

On March 2, 2021, at a closed commission meeting, commissioners Hasty and Williams voted to ban Plaintiff from all county property. Commissioner Gohagan abstained from the vote. This decision was memorialized in a letter that stated:

> Dear Mr. Rinne,
>
> On March 2, 2021 the Camden County Commission voted to ban you from Camden County property for one (1) year from March 2, 2021 for disruptive and harassment [sic] conduct of County elective officials and employees. If you are found to be on Camden County property during this one year period, law enforcement officers will be instructed to remove and escort you from the property.
>
> Very Truly Yours,
>
> [signature]
>
> Greg Hasty, Presiding Commissioner
> On behalf of the Camden County Commission

Defendants state that this ban was issued pursuant to Resolution No. 09-29-20-01, which adopted "a new Policy for providing a safe environment for all taxpayers and visitors visiting and conducting business on County property and all employees working for the County on or within County property[.]" The Resolution prohibits "disruptive, violent, or aggressive behavior such as

3

but not limited to abusive, obscene or sexual language, verbal threats of emotional or physical harm and/or harassment of any kind and physical and threatened physical assault as defined in the criminal statutes" on County property or within County offices or buildings. It also precludes any individual from acting or threatening disruption, or causing an unsafe environment on or within County property. The Resolution states that "individual(s) which caused the disruptive behavior and or unsafe environment may be banned from a County office, building or property by the County office holder where the disruptive conduct occurred, by the Camden County Sheriff or the Camden County Commission[.]" The Resolution authorizes the Commission "to execute such other documents and perform such other acts as may be necessary to implement the Policy."

However, this case focuses on the execution of this policy as directed toward the Plaintiff - not the policy itself. Defendants state that they received "complaints about Plaintiff from almost all of the county offices," including that they were concerned about being recorded and that Plaintiff was "badgering" employees with his requests for information. Defendants argue there were several employees who complained about Plaintiff. Whether Plaintiff's conduct violated the policy and constituted disruptive or unsafe conduct is a factual question. Whether that alleged conduct, or Plaintiff's opinions, motivated the Commission's enforcement action is also a question of fact.

Defendants' briefing also argues an advice of counsel defense. However, Plaintiff alleges that prior to March 2, 2021, McElyea, Defendants' legal counsel, had not been asked to review evidence of any alleged conduct by Plaintiff that may or may not have justified a ban. McElyea was not asked to do an investigation and did not verify any of the allegations made against Plaintiff. The timing and extent of McElyea's legal advice and the role it played in the Commission's actions are also factual disputes. Plaintiff cites to testimony that at the March 2, 2021 Commission

4

meeting, McElyea offered no opinion about whether the facts in this case were sufficient to support the ban. McElyea's legal advice was simply that there was existing authority in the ordinances for bans. McElyea also advised that, even with the imposition of ban, Plaintiff should still be permitted to enter county property to vote and conduct personal or county business in person. Prior to Plaintiff's ban, however, McElyea was not asked to do an investigation and his advice was only that "you can ban Mr. Rinne provided you verify and check out those allegations that have been made against him." McElyea did not advise that it was proper to ban Plaintiff because of his political speech.

Plaintiff argues the Commission's discussion of the ban with McElyea did not include a "discussion of First Amendment rights" or consideration about "whether or not the ban met due process thresholds." Plaintiff further contends McElyea testified he does not consider himself an expert on either topic. Plaintiff cites that none of the employees allegedly lodging complaints against him were heard from at the March 2, 2021 meeting. Plaintiff believes prior to the March 2, 2021 meeting, the only employee who had complained directly to McElyea about Plaintiff was Lloyd, who claimed that Plaintiff accused him on social media of changing a property map related to the Gravel Gate matter.

Plaintiff also alleges he was not provided any due process before he was banned from county property. Plaintiff alleges, and the Defendants do not dispute, that Plaintiff was not given notice or an opportunity to be heard either before or after the County and the Commission instituted the ban.

Additional allegations regarding Defendants' actions against Plaintiff involve actions taken after the ban. For example, after the ban Plaintiff went to the Camden County Courthouse to vote. It is alleged Hasty encouraged the Camden County Sheriff to arrest Plaintiff for violation of the

ban when Plaintiff arrived at the courthouse to vote. Commissioner Williams is also alleged to have encouraged the Camden County Sheriff's office to take further action against Plaintiff.

After the voting incident, the Camden County Sheriff's office cited violation of the ban as a reason to obtain a search warrant to seize copies of Plaintiff's posts and private communications on Facebook. The search warrant application stated, "Mr. Rinne knowingly entered unlawfully, and remained unlawfully in the Camden County Courthouse, and on Camden County property after being served a trespass warning from the presiding Camden County Commissioner for his harassing behavior." An independent prosecutor from Phelps County eventually declined to prosecute Plaintiff. There are material questions of fact regarding these allegations. The admissibility of the evidence is not yet determined but creates a submissible claim to survive summary judgment.

Again, the central issue in this lawsuit is the basis for Defendants' decision to ban Plaintiff from County property for one year and the reasonableness of the scope of that ban. Defendants contend Plaintiff was banned from County property for one year in response to "Plaintiff's increasing harassment and threatening behavior to County employees and past threats of violence." Plaintiff alleges Defendants banned Plaintiff because of his criticisms of Defendants' actions and in an effort to censor and prevent him from sharing his viewpoints.

## STANDARD OF REVIEW

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp., v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 247 (1986). Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248.

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Id.* at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

**Legislative Immunity**

First, Defendants argue that commissioners Hasty and Williams were acting as the County and not individually, that they followed Missouri law, and acted upon the legal advice of the county attorney in good faith. As a result, Hasty argues the individual defendants are vested with absolute legislative immunity.

Defendants cite *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (U.S. 1998), that states:

> Recognizing this venerable tradition, we have held that state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities. We explained that legislators were entitled to absolute immunity from suit at common law and that Congress did not intend the general language of § 1983 to impinge on a tradition so well grounded in history and reason. Because the common law accorded local legislators the same absolute immunity it accorded legislators at other levels of government, and because the rationales for such immunity are fully applicable to local legislators, we now hold that local legislators are likewise absolutely immune from suit under § 1983 for their legislative activities.

(citations omitted); and see also *Leapheart v. Williamson*, 705 F.3d 310, 313 (8th Cir. 2013); and *Forthem, LLC v. City of Clever*, 2013 WL 1727936 (W.D. Mo. 2013).

7

The Court finds Defendants' argument that the vote to ban Plaintiff from all county property was legislative in nature unpersuasive. First, legislative immunity does not apply to all actions taken by a commissioner. Specifically, here the nature of Plaintiff's claims is whether Defendants' actions, in banning him from county property and criminally investigating and/or prosecuting him, was in retaliation for his public criticisms of Defendants. This is not a legislative act and other courts have ruled similarly. See e.g., *Taylor v. Haugaard*, 360 F. Supp. 3d 923, 928–29 (D.S.D. 2019); and *In Kamplain v. Curry County Board of Commissioners*, 159 F.3d 1248 (10th Cir. 1998) (A board of county commissioners voted to ban the plaintiff from commission meetings after the plaintiff protested the board's decision to award a contract to a competing bidder. The Tenth Circuit held that these acts were not legislative because "the circumstances of the case did not concern the enactment or promulgation of public policy" and therefore were not "related to any legislation or legislative function.").

Defendants state that the ordinance, which was passed and allowed for the ban, is a legislative act. However, Plaintiff has not raised a claim regarding the validity of the ordinance itself. Nor does Plaintiff challenge the legality or actions taken in adopting the resolution or ordinance. Rather, Plaintiff alleges Defendants voted to ban Plaintiff in violation of his First Amendment rights. Defendants' motives and actions taken in voting to ban Plaintiff from all county property were not legislative in nature and applied solely to the Plaintiff. It is the application of the resolution to Plaintiff, the scope of the ban imposed, and the motive of the Commission in doing so which is at issue here.

Further, whether the decision to ban Plaintiff was made in response to complaints and/or in an effort to protect the public safety of county officials and employees is also a factual dispute. The credibility of the witnesses regarding the alleged threat(s) and whether Defendants' actions

were taken based on any alleged danger is a question for the jury. Plaintiff has produced enough evidence that a genuine issue of material fact exists regarding Defendants' actions. The Court does not find legislative immunity applies to defendants Hasty and Williams and summary judgment is denied.

**Qualified Immunity**

A public official enjoys qualified immunity from suit under 42 U.S.C. § 1983 unless a plaintiff shows that the official's alleged conduct violated one of the plaintiff's clearly established constitutional rights. See *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "Qualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Nord v. Walsh Cty.*, 757 F.3d 734, 738 (8th Cir. 2014).

To establish a First Amendment retaliation claim, a plaintiff must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

Here, Defendants argue that this case is similar to *Bernini v. City of St. Paul,* where the unlawful conduct of the plaintiffs was in violation of Minnesota law and that the protected speech was not the motivation of the officers. 665 F.3d 997, 1006-1007 (8th Cir. 2012). However, the Court finds *Bernini* distinguishable from the facts presented here. While Defendants argue Plaintiff engaged in disruptive and harassing conduct, those allegations are factual disputes and questions for the jury. There is no undisputed material fact that Plaintiff engaged in unlawful activity or conduct. Further, criticism of public officials and the administration of governmental policies lies

9

at the core of speech protected by the First Amendment and retaliation in response to such an exercise of First Amendment rights is a basis for liability. See *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). Plaintiff's criticism at public meetings and on social media are therefore protected by the First Amendment.

Defendants contend reliance on the advice of legal counsel is an additional factor to be weighed in favor of whether a public official is entitled to qualified immunity. *Young v. Mercer County Commission*, 849 F.3d 728 (8th Cir. 2017). Defendants argue the underlying purpose and policy of qualified immunity is to give government officials "breathing room" to make reasonable but mistaken judgments, and to protect all but the plainly incompetent or those who knowingly violate the law. *Morgan v. Robinson*, 920 F.3d 521, 524 (8th Cir. 2019) (citing *Stanton v. Sims*, 571 U.S. 3, 6, 124 S.Ct. 3, 187 L.Ed.2d 341 (2013) (citation omitted). While reliance on the advice of counsel alone does not automatically insulate Defendants from liability, it may be evidence of objective reasonableness and good faith for qualified immunity. See *Tubbesing v. Arnold*, 742 F.2d 401, 407 (8th Cir. 1984).

The facts regarding whether the individual Defendants voted to ban Plaintiff based on advice of counsel are in dispute. What, if any, legal advice was given by counsel, and when any such advice was given, are factual questions for the jury. Defendants state that "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful 'in light of clearly established law and the information that the defendant possessed.'" *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000), citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.*

Plaintiff has alleged more than mistaken judgement. Plaintiff has alleged Defendants took deliberate actions in retaliation for the comments he was making criticizing their behavior. The Court denies summary judgment on qualified immunity.

**Due Process Violation**

Defendants argue Plaintiff has brought a substantive due process claim and must show "both that the official's conduct was conscience-shocking, and that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Citing *Borishkevich v. Springfield Public Schools Board of Education*, 541 F. Supp. 3d 969, 981 (W.D. Mo. 2021).

In support of this position, Defendants argue "to the extent Plaintiff argues the Resolution is the policy and procedure that violated his due process rights, he fails to show that its enactment deprived him of due process." Defendants contend there is nothing in the record that Defendants could not adopt the Resolution as the policy and procedure of Camden County for regulating harassment and disruptive conduct on County property. There is no evidence that the Commission had to seek public approval, have a vote prior to implementation, or that it did not have the inherent authority to adopt this policy. Defendants state the Eighth Circuit confirmed "[t]he Commission's authority includes the power to regulate the use of county property." *Rinne v. Camden County*, 65 F.4th 378, 382 (8th Cir. 2023).

Defendants argue the County exercised its authority to regulate County property and passed Resolution No. 09-29-20-01. The resolution authorizes the Commission to ban any individual, who engages in disruptive or unsafe behavior, from County property. Defendants state the Commission

11

acted within their prescribed authority in adopting this Resolution to curtail disruptive and harassment conduct and that summary judgment is warranted in favor of Defendants.

Again, however, Plaintiff's claims are not premised on whether the resolution was legally enacted. Plaintiff is not raising a substantive due process claim regarding the passage of the resolution. Rather, Plaintiff claims Defendants' actions in voting to ban him from county property was in retaliation for his speech and behavior and that Plaintiff was not afforded due process.

The standard analysis for due process proceeds in two steps: first whether there exists a liberty or property interest of which a person has been deprived, and second whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Plaintiff argues he has submitted evidence he was deprived of his rights to freely speak, assemble, and petition the government, all of which are protected liberty interests. Citing *Am. C.L. of Missouri Found. v. Lombardi*, 23 F. Supp. 3d 1055, 1062 (W.D. Mo. 2014) (liberty interest in free speech); *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967) ("the rights to assemble peaceably and to petition for a redress or grievances are among the most precious of the liberties safeguarded by the Bill of Rights"). The use of streets and public places have long been deemed part of the privileges, immunities, rights, and liberties of citizens. *Shuttlesworth v. City of Birmingham, Ala*., 394 U.S. 147, 152 (1969). Plaintiff states the County and the Commission deprived him of these rights when they banned him from all Camden County property, including sidewalks, roads, cemeteries, and public buildings, for one year, and then sought to criminally prosecute him for entering County property to vote.

The second step is whether the procedures followed by the government were constitutionally sufficient. The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is

a principle basic to our society." *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 126, 71 S. Ct. 624, 625, 95 L. Ed. 817 (1951). "The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976). The fundamental requirement of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

Plaintiff was deprived of the use of County property which the Court finds is a protected interest. Further, Plaintiff has alleged he was criminally prosecuted based on Defendants' actions. In addition, Plaintiff specifically alleges he was not given an opportunity to be heard on the alleged complaints against him or before the ban was imposed. Plaintiff clearly alleges he was not given an opportunity to be heard or any notice prior to the ban depriving him of his rights to access county property. Defendants do not dispute the ban was discussed and voted on in a closed session. Further, there is no evidence Plaintiff was given any notice of the ban until after it was instituted. Plaintiff was not allowed to challenge the scope, timing, or rational for the ban. The Court finds this is enough for Plaintiff to survive summary judgment on this due process claim. For the reasons stated herein, the basis for the county ban and whether Defendants' violated Plaintiff's rights to due process creates a question of fact that survives summary judgment.

**Absolute Immunity**

Defendants also argue federal, state, and local legislatures are entitled to "absolute immunity from suit under § 1983 for their legislative activities." *Grant-Davis v. Bd. of Trustees of Charleston Cnty. Pub. Libr.*, 2017 WL 9360875, at *18 (D.S.C. May 24, 2017), aff'd, 710 F. App'x 134 (4th Cir. 2018) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 46, 49 (1998)). "This immunity attaches to 'all actions taken in the sphere of legitimate legislative activity' and extends to

13

Case 2:21-cv-04076-MDH    Document 231    Filed 06/27/24    Page 13 of 16

'[o]fficials outside the legislative branch … when they perform legislative functions.'" *Id*. Defendants argue Plaintiff's challenge to the issuance of the ban arise from the Resolution which was a legislative action and that because the Commission's action in passage of the Resolution were quintessentially legislative actions Defendants are entitled to absolute immunity.

Defendants further argue the County Commission met in accordance with the Resolution, consulted with the county attorney, and chose to act in response to Plaintiff's actions. Defendants again contend they received multiple complaints from employees regarding Plaintiff's alleged threatening and harassing behavior. Defendants state these actions fall squarely in the category of legislative activity.

The Court has already addressed these arguments throughout this Order. The Court denies the actions were legislative in nature. Issuance of the ban was an enforcement action and not a legislative one. Defendants' arguments are factual disputes for the jury. There are material questions of fact surrounding the actions taken by Defendants and any alleged underlying behavior of the Plaintiff. Summary judgment is denied.

### Claims against Camden County are Duplicative of Claims against Camden County Commission

Camden County is one of one hundred and fourteen counties and one city in the State of Missouri. Mo. Rev. Stat. 46.040. Camden County, is an area of land in the State of Missouri as set forth in Missouri Statute 46.064. The Camden County Commission is a governmental entity composed of three elected commissioners. Mo. Rev. Stat. § 49.010. In the Second Amended Complaint, Plaintiff asserts identical causes of action against Camden County, Missouri and the Camden County Commission for violation of the First Amendment (Count II) and violation of the Fourteenth Amendment (Count III). Defendants argue Camden County and the Camden County Commission are functionally equivalent. Similar to official capacity claims, identical claims

against both the County and Commission are duplicative or redundant. Citing *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

Plaintiff argues the County Commission is a distinct legal entity that can be sue and be sued. However, regardless of whether the Commission is a suitable entity in a § 1983 action, Plaintiff cannot make a submissible claim to recover damages against both the County and the Commission based on the same claims. The Court agrees with Defendants that the causes of action are the same and his relief is not different between the two entities. As a result, the claims are duplicative and Plaintiff shall only be allowed to seek relief against either the County or the Camden County Commission – not both.

**Punitive Damages**

"[T]he Supreme Court held that a municipality is immune from punitive damages under § 1983." See *Kelly v. Clay Cnty., Missouri,* No. 12-0778-CV-W-BP, 2012 WL 12904711, at *1 (W.D. Mo. Nov. 2, 2012); and *Gabriel v. Andrew County, Missouri*, No. 5:18-cv-06158-DGK, 2019 WL 3210086, at *3 (W.D. Mo. 2019) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 257, 271 (1981)). "The Court reasoned that an unpredictable award of punitive damages against a municipality 'punishes only the taxpayers.'" *Id*. This same reasoning applies to counties. *Id*.

With regard to punitive damages against individuals the purpose of punitive damages in a § 1983 claim are to: (1) "punish willful or malicious conduct; and (2) deter future unlawful conduct." *Royal v. Kautzky*, 375 F.3d 720, 724 (8th Cir. 2004). The Eight Circuit's standard for imposing punitive damages is high and only appropriate in extreme circumstances. See *Davis v. Buchanan Cty. Missouri*, No. 5:17-CV-06058-NKL, 2020 WL 2616830 at *1 (W.D. Mo. May 22, 2020). Plaintiff has alleged defendants Hasty and Williams engaged in outrageous, intentional, or malicious conduct that would justify an imposition of punitive damages. There are questions of

15

fact regarding the individual Defendants' motives and/or reasoning for their decision to vote in favor of issuing a ban to Plaintiff.

For example, in support of Plaintiff's claims, Plaintiff cites to a local news outlet "Lake Expo" that published a letter to the editor submitted by former Commissioner Hasty. In the letter, Hasty accused Plaintiff of violating the ten commandments ("There is a reason why 'thou shalt not bear false witness against thy neighbor' is one of the top ten on God's list. It is grouped right in with murder.") and of "fueling mass hysteria in our community" with "continuous attacks… denigrating and maligning dozens of individuals." Plaintiff alleges Hasty also called Plaintiff "a poison on our community," compared Plaintiff to the perpetrators of the Salem Witch Trials, and stated that it "falls on [Hasty] to make a stand, founded on the principals of freedom and justice."[2]

The Court finds Plaintiff's claims for punitive damages against Hasty and Williams survive summary judgment. The Court will determine whether Plaintiff has made a submissible claim for punitive damages after evidence is presented at trial. The Court makes no finding, at this time, as to whether a claim for punitive damages will ultimately be presented to the jury.

## CONCLUSION

Wherefore, for the reasons set forth herein, the Court denies Defendants' motions for summary judgment. (Docs. 171 and 173).

**IT IS SO ORDERED.**

DATED: June 27, 2024

                                           */s/ Douglas Harpool*
                                           **DOUGLAS HARPOOL**
                                           **UNITED STATES DISTRICT JUDGE**

---

[2] Defendants object to the admissibility of this evidence.